court, and is opposed to the general current of authority on the subject.

There is a plain distinction between a transfer of negotiable paper in payment of a precedent debt, and one made merely as security for its ultimate payment. In the latter case no right is relinquished; the debt continues, as before, in full force, neither postponed or extinguished; but in the former, it is gone forever.

In the present case the check was not received as payment, but as security. Scott could have sued Watrous when the check was received, and, for aught that appears in the testimony, that right is still unimpaired. Scott paid nothing for the check, incurred no new obligation and relinquished no right in consequence of receiving it. The judge therefore erred in his charge, and a new trial should be granted.

New trial granted.

## INGERSOLL vs. RHOADES.

Where a judgment is rendered subsequently to the filing of a bankrupts petition, but previously to the discharge being granted, it is not canceled by the discharge. (a)

A moral obligation to pay constitutes a valid consideration for a new promise, notwithstanding a bankrupt discharge; but to maintain an action on a promise to pay when able, proof of the ability to pay must be given.

ERROR to the Onondaga common pleas. Ingersoll sued Rhoades in a justice's court in trover for fifty-nine barrels of salt, to which the defendant pleaded the general issue and gave notice that the salt was taken on an execution in

(a) In *Clark* v. *Rowling*, 3 Comst., 216, the court of appeals decided, that a discharge in bankruptcy under the late act of congress operates upon a judgment obtained against the bankrupt intermediate the commencement of the proceedings and the granting of the discharge, where the judgment is founded on a debt existing at the time the proceedings were commenced. See the cases of *Thompson* v. *Hewitt*, 6 Hill, 254, and *Kellogg* v. *Schuyler*, 2 Den., 73, commented on and explained in *Clark* v. *Rowling*. See further *Dresser* v. *Brooks*, 3 Barb., 429, and *Fox* v. *Woodruff*, 9 id., 498.

favor of Hall, Rhoades & Sherman, which was issued on a
judgment in their favor against Ingersoll. The plaintiff
recovered in the justice's court and judgment was rendered
9th Sept., 1843. It was carried by appeal to the common
pleas, and on the trial in that court a bill of exceptions was
taken by Rhoades (the defendant in that court).

It appeared on the trial that the salt was seized and sold,
by the direction of Rhoades, in August, 1843; the seizure
and sale being made by one Cook, a constable, on an execu-
tion in his hands. A judgment in favor of Hall, Rhoades
& Sherman against Ingersoll, rendered by a justice of the
peace on 1st May, 1843, was proved, and upon which the
said execution was issued, August 5th, 1843. Cook, having
levied on the salt, sold the same on the 14th of said August,
by direction of the defendant.

In answer to this defence the plaintiff offered to prove a
decree in bankruptcy made the 11th March, 1843, declaring
Ingersoll to be a bankrupt, and which recited that said
Ingersoll filed his petition for the benefit of the bankrupt
act on the 27th of Jan., 1843. And further, to prove a
decree of the district court of the United States of the
24th July, 1843, discharging said Ingersoll from all debts
due by him at the time of filing said petition, and that the
demands on which said judgment was rendered were due at
and before the time of the filing said petition, and were then
in the hands of the plaintiff in said judgment; that said
Rhoades had notice of the discharge and was forbidden to
sell said salt.

This proof was objected to by the counsel for the defend-
ant, Rhoades, as irrelevant, as the discharge could only be
rendered available by a proper application to the United
States court, to prevent the collection of a judgment ren-
dered after a decree of bankruptcy and before the discharge.
The court overruled the objection and allowed the evidence
to be given; said court also instructed the jury that said
evidence furnished a full answer to the justification founded
on the judgment and execution to which the counsel for
said Rhoades excepted.

The counsel for the defendant (Rhoades) then proved

that about the last of April, 1843, and after the decree of bankruptcy, said Ingersoll stated to the witness, who gave the testimony, that he was about going into bankruptcy, but that the debt due to Hall, Rhoades & Sherman was a just and honorable debt and should be paid, that he was unable to pay just then, but it should be paid; this was said to the clerk of Hall, Rhoades & Sherman. The counsel for Rhoades asked the court to charge the jury that this promise furnished a full answer to the proceedings in bankruptcy, but the court, on the contrary, charged that the promise did not invalidate the discharge, to which the counsel for the defendant excepted. The jury found a verdict for the plaintiff, Ingersoll.

*Sedgwick & Outwater*, for plaintiff in error

*G. W. Noxon*, for defendant in error.

I. The judgment in favor of Hall, Rhoades & Sherman was discharged by the proceedings in bankruptcy.

The two notes upon which that judgment was founded, were provable under the bankrupt act.

The original indebtedness was therefore discharged by the final decree of discharge. See bankrupt act, section 4; and *Depuy* v. *Swart*, 3 Wend., 135; *Birch* v. *Sharland*, 1 Term R., 715. According to the decision in 3d Wendell above refered to the notes on which the justice's judgment was rendered were *functi officio*, they should be considered as paid by the discharge.

But it is said that the judgment on the two notes created a new debt, that the consideration or original indebtedness was merged in the judgment. This doctrine of merger is founded in fiction. The judgment is but an expression of a court upon the original indebtedness, it changes its form, but it remains the same debt. To allow this doctrine to hold in this case would be to allow the substantial ends of justice to be defeated by a new fiction. It would be to encourage creditors to evade the law of the land by trick and cunning manœuvres.

This court has set aside *final process*, on motion in cases similar to the one in hand (1 Cowen R., 42, and note; ib., 179; ib., 165), on the ground that the party had no opportunity to plead his discharge.

II. The defendant in error was not bound to plead his discharge. Sec. 4, bankrupt act, provides that the discharge "shall and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever." This relates to the manner of using the discharge *by way of defence*, and not where the bankrupt sues and is compelled to use his certificate of discharge in answer to the defendant's proof.

In this case the declaration was in trover, and the plea the "general issue and *notice of justification*, &c." The discharge could not be replied by way of pleading to the notice of justification.

In this case there was no surprise on the part of Rhoades. He acknowledged before the sale of the salt that he knew all about the proceedings in bankruptcy, and he could therefore have been prepared on the trial to contest the validity of the discharge.

III. No injunction could have issued out of the United States court to restrain the proceedings on the execution in favor of Hall, Rhoades & Sherman. Conkling's Treatise, page 87; *Wiggs* v. *Wolcott*, 4th Cranch, 179.

If an injunction was issuable out of the United States court in such cases to stay proceedings on the executions, still the remedy would be inadequate, because 1st. No writ of injunction shall be granted to stay proceedings in any case without reasonable notice to the adverse party or his attorney of the time and place of moving for the same. Conkling's Tr., page 13. *Reasonable notice* would in many cases be beyond the day of sale. 2d. The expense and trouble of procuring an injunction would be greater in many cases than the debt. 3d. The defendant in the judgment may be kept ignorant of the plaintiff's proceedings until the day of sale when it would be too late to apply for an injunction. 4th. The defendant in the execution might be absent from home when his property was levied on and sold. Has he no remedy in such a case?

IV. If an injunction might issue in such cases, still it would not be the only remedy. Suppose the judgment of Hall, Rhoades & Sherman to have been in a court of record, would not a court of record have stayed the proceedings on the judgment on motion. See the cases in 1st Cow., pages 42, 165, 179. Here there would have been a remedy concurrent with that by injunction.

V. The bankrupt must be allowed an opportunity to avail himself of his discharge. He could not plead it, because he did not obtain it until after the judgment was rendered. He could not stay the proceedings upon motion, the judgment being in a justice's court.

VI. The attempt to enforce the collection of Hall, Rhoades & Sherman's judgment was a fraud upon the bankrupt act, and designed unfairly to defeat its operation. Rhoades knew the debt was discharged, he also knew he had no right .to use the judgment in the face of these facts, he does attempt to collect it, and sells property under it; he is liable to an action.

Suppose a judgment in a court of record to be *paid* by the defendant to the plaintiff in person. The plaintiff subsequently causes execution to issue and *property* to be sold on it. Is he not liable in trover or trespass? Would the fact that there was a judgment *not discharged* (but only paid) justify the plaintiff? Certainly not. But the bankrupt law operates to *discharge the debt*, and when the debt is discharged by a bankrupt act, the court regards the debt (so far as enforcing its collection is concerned) as paid, and so it was held in *Depuy* v. *Swart*, 3 Wend., 135. See Marcy's (justice) opinion in that case and the authorities there cited.

VII. The new promise relied upon by the plaintiff in error did not alter the case. 1st. It did not amount to a promise to pay the debt at all. 2d. The debt which *this promise was to revive*, as claimed by plaintiff in error, *was not then discharged*, and the promise could not therefore be relied ·upon to *revive* the debt. 3d. A promise in such case in order to be available should be ·made after the discharge, and should be a full and explicit promise to pay. *Lynbury* v. *Wrightman*, 5 Esp. R., 198; 3 Wend., 139.

*By the Court,* BEARDSLEY, J.   The promise made by Ingersoll to the clerk of Hall, Rhoades & Sherman amounted to nothing.   It was made, such as it was, after Ingersoll had been declared a bankrupt, but before his discharge.   The debt due from him was then in full force, and there was no occasion for a new promise.   Subsequently, and before the discharge was granted, the debt was carried into judgment, the effect of which can not at all depend upon the previous engagement to pay.

A moral obligation to pay continues notwithstanding a bankrupt discharge, and constitutes a valid consideration for a new promise.   But the promise proved in this case, had it been made after the discharge, would not have aided the parties.   It was not an absolute engagement to pay, but a promise to pay when able to do so.   This is the substance of the testimony given by the witness, for he states that Ingersoll said the debt was a just one, and should be paid, but he was just then unable to pay it.   This repels the idea that he intended to make an absolute engagement, and under such a promise, had it been made subsequently to the discharge, proof of the ability of the party to pay must have been given.   (*Depuy* v. *Swart*, 3 Wend., 135 ; *Fleming* v. *Hayne*, 1 Stark. N. P. Cas., 370.)   But it is enough to say here that the promise, whatever it was, had no reference to this judgment, the validity of which was the point in question on the trial.

The judgment was rendered subsequently to the bankrupt petition, but previously to the discharge being granted.   By this judgment the original indebtedness was extinguished, but the judgment debt was not provable under the bankrupt act so as to entitle the creditor to a distributive share of the property, and therefore was not canceled by the discharge. The judgment remaining in force, notwithstanding the discharge, was a full authority for the execution, and the sale was regular and valid.

The judgment of the common pleas was erroneous and must be reversed.

Judgment reversed.